**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**April 28, 2004**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

03-30426

UNITED STATES OF AMERICA,

Plaintiff,

VERSUS

TRIDENT CRUSADER, ETC.,

Defendant,

and

DET NORSKE VERITAS,

Intervenor-Plaintiff-Appellant,

VERSUS

UNITED STATES OF AMERICA,

Intervenor-Defendant-Appellee.

Appeal from the United States District Court
For the Western District of Louisiana

Before DUHÉ, BARKSDALE, and DENNIS, Circuit Judges.

DUHÉ, Circuit Judge:

This case presents the question whether a preferred ship
mortgage is void if recorded after a vessel was documented, but
before the vessel construction was complete. Appellant Det Norske
Veritas (DNV) intervened in this foreclosure action by Appellee,
the Maritime Administration of the United States Department of

Transportation (MARAD), the holder of the first preferred ship mortgage. The M/V TRIDENT CRUSADER was seized and sold to MARAD as a credit bid against MARAD's mortgage debt, and the intervenor's claim was referred to the proceeds. The district court found that MARAD had a valid preferred ship mortgage on the CRUSADER that takes precedence over the claim of DNV, holder of a "necessaries" lien.[1] We agree and affirm.

## I.

The parties agreed that "A first preferred ship mortgage in favor of the United States, as mortgagee, was placed on the CRUSADER in July, 1999. The mortgage secured a guarantee, pursuant to Title XI of the Merchant Marine Act, 1936, as amended, 46 U.S.C. App. §§ 1271 *et seq.*, from [MARAD] of the loans by which the CRUSADER's construction was financed."[2] DNV challenges the validity of MARAD's preferred ship mortgage, arguing first that M/V CRUSADER was not a "vessel" so that a lien could not have attached. When the mortgage was placed on the CRUSADER in July 1999, the CRUSADER had not completed its sea trials; sea trials were completed August 18, 1999.[3] Vessel documentation, however, was

---

[1] DNV was employed as a classification society and was retained to provide pre-classification services for the review of plans and specifications and supervision of actual construction. The services it provided after vessel completion were necessaries. Stipulation nos. 6, 28.

[2] Stipulation no. 15.

[3] Stipulation nos. 16-17.

complete on July 27, 1999, the date the mortgage was recorded.[4] The district court found that the CRUSADER was incomplete July 27 and complete August 18, 1999, when its sea trials were completed.[5] The court held that the mortgage was properly recorded on the vessel upon documentation even though the vessel was incomplete.[6]

A vessel can be mortgaged before its construction is completed. Section 1271 of Title 46 defines "mortgage" to include both a "*preferred mortgage* as defined in section 31301 of Title 46" as well as "*a mortgage on a vessel that will become a preferred mortgage* when filed or recorded under chapter 313 of Title 46." 46 U.S.C. App. § 1271(a) (emphasis added). "Vessel" is defined to include:

> all types, *whether in existence or under construction*, of passenger cargo and combination passenger-cargo carrying vessels, tankers, tugs, towboats, barges, dredges and ocean thermal energy conversion facilities or plantships *which are or will be documented* under the laws of the United States, [certain] fishing vessels . . . [certain] floating drydocks . . . and [certain other] vessels.

Id. § 1271(b) (emphasis added). With that broad definition of the term "vessel," a "mortgage on a vessel" may be made before the vessel's construction is completed.

---

[4] On July 27, 1999, the New Orleans Office of the National Vessel Documentation Center issued a Certificate of Documentation based on presentation of documents from the owner (Application for Initial Issue, Exchange, or Replacement of Certificate of Documentation; Redocumentation, stipulation no. 11), from DNV (International Tonnage Certificate, stipulation no. 12), and from the builder (Builder's Certification and First Transfer of Title, stipulation no. 13). Stipulation no. 14.

[5] 9 R. 368.

[6] Id. 370.

Largely on stipulations, the Court found that MARAD's mortgage was a preferred mortgage as defined in section 31322.[7]  Under that section a "mortgage," "whenever made," is not a "preferred mortgage" unless it

> (1) includes the whole of the vessel;
> (2) is filed in substantial compliance with section 31321 of this title [and];
> (3)(A) covers *a documented vessel;* or
>    (B) covers *a vessel for which an application for documentation is filed* that is in substantial compliance with the requirements of chapter 121 of this title and the regulations prescribed under that chapter . . . .[8]

A "documented vessel" as intended in section 31322 is "a vessel documented under chapter 121 of [title 46]."[9]  Reading these provisions together and with the parties' stipulations, we hold that the court correctly determined whether the mortgage was a preferred mortgage by considering when the mortgage was filed under chapter 313 and when the vessel was "documented" as provided in chapter 121, rather than whether the CRUSADER was a "vessel" under the definitions DNV offers.

Congress and the Secretary have defined "vessel" in distinct ways for distinct purposes.  Subtitle III, in which sections 30101–31522 are found, does not encompass the Title 1 definition of "vessel" that DNV would have us employ, i.e., "capable of being

---

[7]  9 R. at 370-71.

[8]  46 U.S.C. § 31322(a) (emphasis added).

[9]  46 U.S.C. § 30101(1).

used as a means of transportation on water."[10]  The "vessel" required to confer seaman status, too, is obviously different, because a Jones Act "vessel" must be in navigation.[11]  We disagree with DNV's contention that the existence of a completed "vessel" as required for admiralty jurisdiction is the appropriate test, because the definition of "vessel" for purposes of a mortgage on a vessel plainly does not require that construction be completed.[12]

DNV suggests, too, that because the preferred mortgage is a

---

[10]  1 U.S.C. § 3.  *Compare* 46 U.S.C. § 30101(1) (definitions for Subtitle III, consisting of the provisions at issue in this case, 46 U.S.C. §§ 30101-343, with no adoption of § 3's definition) *with* 46 U.S.C. § 2101(45)  (definitions for Subtitle II, adopting meaning of "vessel" given in 1 U.S.C. § 3).

[11]  Jones Act recovery is impossible unless a vessel is "in navigation," Caruso v. Sterling Yacht & Shipbuilders, Inc., 828 F.2d 14 (11th Cir. 1987), but the phrase "documented vessel" in § 30101(1) has no such requirement.  Compare 46 U.S.C. § 30101(5), which defines "seaman" to mean "a master or a crewmember of a vessel *in operation*")(emphasis added).

[12]  46 U.S.C. App. § 1271(b).  Regulations governing obligation guarantees, part 298 of title 46, similarly provide,

Vessel means *all types of vessels, whether in existence or under construction*, including passenger, cargo and combination passenger-cargo carrying vessels, tankers, towboats, *barges* and dredges *which are or will be documented* under the laws of the United States, [certain] floating drydocks . . . [and other] vessels. . . .

46 C.F.R. § 298.2. (emphasis added).

To the extent that In re Biloxi Casino Belle equates the meaning of "vessel" in 46 U.S.C. §§ 30101, 31321 and 31322 with the definition of a "vessel" under 1 U.S.C. § 3 and or the existence of a "vessel" required for purposes of admiralty jurisdiction, we disagree with it.  Charles N. White Constr. Co. v. MRA, Ltd. (In re Biloxi Casino Belle, Inc.), 176 B.R. 427, 432-35 (Bkrtcy. S.D. Miss. 1995).

species of maritime lien,[13] maritime jurisdiction cannot exist unless the vessel meets the admiralty-jurisdiction definition of "vessel."[14] Maritime jurisdiction has been present over preferred mortgages, however, since enactment of the Ship Mortgage Act in 1920.

The statute (then and now) provides for jurisdiction to enforce a preferred mortgage via an in rem proceeding.[15] The Supreme Court in Thomas Barlum determined that a district court had such jurisdiction provided Congress had authority to grant it, and indeed found Congressional authority to expand admiralty jurisdiction to preferred mortgages although they were not formerly considered to be maritime contracts.[16]

We also disagree with DNV's suggestion that Congress did not expand maritime jurisdiction with the enactment of the Ship Mortgage Act, which made ship mortgages subject to admiralty jurisdiction and foreclosure by in rem process.[17] Formerly, a ship

---

[13] The statutory scheme deems the preferred mortgage a "lien" on the "vessel," 46 U.S.C. § 31325(a), but does not call it a "maritime lien." The statute distinctively denominates maritime liens and preferred mortgage liens where both are intended. E.g., 46 U.S.C. § 31326(a).

[14] DNV did not contest federal jurisdiction because the United States is a party.

[15] See 46 U.S.C. § 31325(c) of the 1989 Maritime Commercial Instruments and Liens Act, 46 U.S.C. § 31301-31343, replacing the Ship Mortgage Act of 1920, previously codified at 46 U.S.C. § 911 et seq. (repealed 1989).

[16] Detroit Trust Co. v. The Thomas Barlum, 293 U.S. 21, 32, 52, 55 S.Ct. 31, 41, 42 (1934).

[17] For provisions of current enactment, see 46 U.S.C. § 31325(b)(1)&(c).

mortgage was not subject to remedies in admiralty, being a contract that was not maritime.[18]  "But it did not follow . . . that Congress was without power to amend the law so as to enable the admiralty courts to take cognizance of mortgages on ships . . . ."[19]

The real question is thus whether the mortgage is preferred — not whether the preferred mortgage lien is maritime.  To create public confidence in obligations issued on the faith of ship mortgages, the Congress "[gave] a definite and assured character to such mortgages provided they met certain simple conditions."[20] Congress considered, as was within its discretion, "methods by which securities are issued to the public and dealt in, and the well-known usages of business in this regard."[21]  As the Supreme Court declared, "The mortgage is made preferred only upon compliance with all the conditions specified, . . . and the [competing] maritime lien is preferred if it arises before the recording . . . of the mortgage.  We see no room for construction, and there is nothing for the courts to do but to bow their heads and obey."[22]

The district court thus properly focused on whether the mortgage attained preferred status by satisfaction of those simple

---

[18]  Bogart v. The John Jay, 58 U.S. (17 How.) 399, 402, 15 L. Ed. 95 (1854).

[19]  Thomas Barlum, 293 U.S. at 40, 55 S.Ct. at 47.

[20]  Id., 293 U.S. at 51, 55 S.Ct. at 41.

[21]  Id., 293 U.S. at 51-52, 55 S.Ct. at 41.

[22]  Morse Dry Dock & Repair Co. v. The Northern Star, 271 U.S. 552, 556, 46 S.Ct. 589, 590 (1926).

conditions specified in the statute. Accordingly, the district court's consideration of filing of the mortgage, eligibility for documentation of the vessel, and documentation were entirely appropriate to determining when the mortgage became a preferred mortgage under 46 U.S.C. App. § 1271(a) and 46 U.S.C. § 31322(a).

With respect to the requirement in section 31322(a)(2), that a mortgage be filed in "substantial compliance" with section 31321, we find no error or no error preserved. DNV cites legislative history under section 31321 declaring that if someone proves "that an instrument is invalid because it is not in substantial compliance with the legal requirements, then the responsibility for that is on the party that was responsible for providing that information, not the Secretary."[23] DNV has not established MARAD's responsibility under that principle, however.

DNV does contend that MARAD "elected to rush to a premature closing on an incomplete vessel." The only misinformation in the documentation that DNV notes, for the first time in its reply brief, is the representation in the builder's certificate that the CRUSADER's "entire construction" was completed.[24] DNV has neither attempted to argue that MARAD was responsible for such misinformation, nor shown that the district court clearly erred in finding that MARAD had nothing to do with the documentation

_____

[23] H. Rep. No. 100-918, *reprinted in* 1988 U.S.C.C.A.N 6104, 6110.

[24] Reply br. at 7 n.2.

8

process.[25]

## II.

DNV's second challenge is that MARAD was not in "good faith" because when it took its mortgage, it knew of existing charges and liens against the CRUSADER. The former Ship Mortgage Act required an owner's affidavit of good faith to be filed with a mortgage, but this requirement was repealed.[26] In 1989 the Maritime Commercial Instruments and Liens Act[27] replaced the Ship Mortgage Act of 1920. Jurisprudence under the former act extended the statutory requirement for an owner's affidavit of good faith (under former § 922(a)(3)) to derivatively require the mortgagee to also be in good faith.[28] The affidavit of good faith is not required under the current law, and new penalties have been imposed as substitute protection against fraud.[29] We will not read into the current law the provisions of a repealed act or its jurisprudential gloss where Congress has not seen fit to carry forward the provisions at issue.

Further, the district court specifically found no bad faith

---

[25] 7 R. 368.

[26] See 46 U.S.C. § 922, *repealed 1989 by* Pub.L. 100-710.

[27] 46 U.S.C. § 31301-31343.

[28] Farmers & Traders State Bank of Meredosia v. Magill (In re Meredosia Harbor & Fleeting Serv., Inc.), 545 F.2d 583, 587-88 (7th Cir. 1976), cert. denied, 430 U.S. 967, 97 S.Ct. 1649, 52 L. Ed. 2d 359 (1977).

[29] E.g., 46 U.S.C. §§ 31309, 31323(c), 31330; see H. Rep. No. 100-918, *reprinted in* 1988 U.S.C.C.A.N 6104, 6135 ("This section [31322] eliminates the requirement for the inclusion of an affidavit of good faith. However, both criminal and civil penalties have been added to help ensure that there is not fraud.").

and no fraud or other inequitable conduct on the part of MARAD[30] warranting equitable subordination[31] or denial of preferred status. We discern no clear error in those findings or any misapplication of law.

                                III.

The district court properly focused on the statutory scheme which specifies certain simple conditions that make a "mortgage on a vessel" become a "preferred mortgage." Upon review of the record, we find no clear error in the court's findings that those conditions were met and that no fraud or misconduct on MARAD's part warranted avoidance of its position of preference. MARAD's preferred mortgage takes priority over DNV's necessaries lien. 46 U.S.C. § 31326(b)(1). The judgment of the district court is

AFFIRMED.

---

[30]  9 R. 358-59, 373-75.

[31]  The district court refused to equitably subordinate MARAD's lien. Although discussed to a limited extent in MARAD's brief and at argument, equitable subordination is beyond the scope of our review. DNV's asserted error is that the mortgage was invalid from its inception, not that it should be equitably subordinated.