**INTERNATIONAL MARINE RESEARCH INSTITUTE, INC., Plaintiff,**

v.

**John H. RUMPEL, Defendant.**

**No. 6:05–cv–626–Orl–31KRS.**

United States District Court, M.D. Florida, Orlando Division.

June 9, 2006.

ommendation (Doc. 82), recommending that the Motion for Summary Judgment (Doc. 46) be granted in part and denied as part. Neither party having filed an objection thereto, it is hereby

**ORDERED** that:

1. The Report and Recommendation of the Magistrate Judge is adopted and confirmed;

2. The Motion for Summary Judgment filed by Plaintiff International Marine Research Institute, Inc. (Doc. 82) is **GRANTED** as to the claim in Count One that Rumpel does not have a maritime lien against the Vessel Victoria, Official Number 955331, in the amount of $300,000 and **DENIED** in all other respects;

3. Count Two is **DISMISSED WITHOUT PREJUDICE.**

REPORT AND RECOMMENDATION

SPAULDING, United States Magistrate Judge.

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on Plaintiff International Marine Research Institute Inc.'s Dispositive Motion for Summary Judgment Pursuant to Fed.R.Civ.P. 56 or, in the Alternative, Motion to Dismiss for Failure to State a Cause of Action Upon Which Relief May Be Granted, doc. no. 46, and Defendant John H. Rumpel's responses thereto, doc. nos. 62, 78.

International Marine Research Institute, Inc. (IMRI) filed the following documents in support of the present motion: (1) a Notice of Claim of Lien against the Vessel Victoria, Official Number 955331, in the

James W. Stroup, James W. Stroup, P.A., Ft. Lauderdale, FL, for Plaintiff.

Jason A. Rosenthal, The Rosenthal Law Firm, P.A., Orlando, FL, for Defendant.

**ORDER**

On May 19, 2006, the Honorable Karla R. Spaulding entered a Report and Rec-

amount of $300,000, signed under penalty of perjury by Rumpel; (2) a second Notice of Claim of Lien against the Vessel Victoria, Official Number 955331, in the amount of $13,397.96, signed under penalty of perjury by Rumpel; (3) a document entitled "Deed of Gift" pertaining to the Vessel Victoria, Official Number 955331, signed under penalty of perjury by Rumpel; and (4) an unsworn letter addressed to Rumpel dated December 14, 2003, from Marilyn Roden, Executive Director for Rachel's Children International, Inc. (Rachel's).[1] Doc. No. 46.

In response to the motion, Rumpel submitted the following documents: (1) the Affidavit of John Rumpel and supporting exhibits; (2) excerpts from the deposition of Rumpel; (3) excerpts from the deposition of Roden; (4) excerpts from the deposition of James Scott; and (5) IMRI's unverified responses to certain interrogatories. Doc. No. 62. In a supplement to the response filed with permission of the Court, Rumpel submitted excerpts from the deposition of Russell Thomas, along with supporting exhibits. Doc. No. 78.

## 1. PROCEDURAL HISTORY.

IMRI filed a three-count Amended Complaint against Rumpel. Doc. No. 6. In Count One, IMRI seeks a declaratory judgment that Rumpel is not entitled to any maritime liens against the Vessel Victoria, Official Number 955331, based on two Notices of Claim of Lien he recorded with the United States Coast Guard (Coast Guard). In Count Two, IMRI seeks a declaratory judgment that Rumpel is not entitled to a maritime lien against a 53' Carver motoryacht, Official Number 1114341, based on a separate Notice of Claim of Lien. In Count Three, IMRI seeks a declaratory judgment as follows: (1) that Rumpel is not entitled to a maritime lien for any goods, services or money advanced as claimed in the three Notices of Claim of Lien; (2) that Rumpel exchanged the Vessel Victoria, along with $300,000, to acquire a 53' Carver motoryacht as "an even trade"; and (3) that Rumpel is liable to IMRI for slandering title to the Vessel Victoria.[2] *Id.* at 4–8.

IMRI attached to the Amended Complaint the following documents: (1) a December 14, 2003, letter from Roden to Rumpel acknowledging a loan for $300,000 made by Rumpel; (2) a Deed of Gift signed under penalty of perjury by Robert E. Darnaby regarding the Vessel Dock–Ter's Haven, Official Number 1114341; (3) a Deed of Gift signed under penalty of perjury by Rumpel regarding the Vessel Victoria, Official Number 955331; (4) a Notice of Claim of Lien in the amount of $300,000 signed under penalty of perjury by Rumpel regarding the Vessel Victoria, Official Number 1114341; (5) a Notice of Claim of Lien in the amount of $300,000 signed under penalty of perjury by Rumpel regarding the Vessel Victoria, Official Number 955331; (6) a Notice of Claim of Lien in the amount of $13,397.96 signed

---

1. In the motion, IMRI cites to the Deposition of John Rumpel, but it did not file this deposition in support of the motion. The missing portions of the deposition are not essential to resolution of the issues presented in the instant motion.

2. The sworn statements and documents submitted to the Court refer to the two vessels at issue by various names. For purposes of this report, references to the Vessel Victoria and the 48' Ocean vessel refer to the vessel with Official Number 955331, and references to the Vessel Dock–Ter's Haven, the Dock–Tor's Haven, the 53' Carver motoryacht, and the 53' Carver S30 Voyager–Pilothouse, all refer to the vessel with Official Number 1114341.

under penalty of perjury by Rumpel regarding the Vessel Victoria, Official Number 955331; and (7) a Bill of Sale signed under penalty of perjury by Roden regarding the sale of the Vessel Dock–Tor's Haven, Official Number 1114341, from IMRI to Rumpel. *Id.*[3]

Rumpel filed a motion to dismiss the Amended Complaint for lack of standing, doc. no. 10, which was denied by the presiding district judge, the Honorable Gregory A. Presnell, doc. no. 17. Thereafter, Rumpel answered the Amended Complaint and asserted a three-count counterclaim against IMRI. Doc. No. 18. In Count One of the counterclaim, Rumpel seeks reformation of a promissory note to reflect that he loaned $300,000 to IMRI rather than to Rachel's, a sister charity of IMRI. In Count Two of the counterclaim, Rumpel alleges that IMRI defaulted on its obligations to repay the promissory note, as reformed. In Count Three of the counterclaim, Rumpel demands repayment of the $300,000 loan, plus interest. *Id.*

Discovery in this case is now closed, and all discovery issues have been resolved. Accordingly, the present motion for summary judgment or, in the alternative, to dismiss Rumpel's counterclaims is ripe for consideration. Judge Presnell referred the motion to me for issuance of a Report and Recommendation.

## II. JURISDICTION.

To the extent IMRI seeks a declaratory judgment that Rumpel does not have maritime liens on the Vessel Victoria, federal jurisdiction is premised on the Commercial Instruments and Maritime Lien Act (CIMLA), 46 U.S.C. § 31301 *et seq.*[4] Specifically, 46 U.S.C. § 31343(c)(2) provides, in relevant part, as follows:

> The district courts of the United States shall have jurisdiction over a civil action in Admiralty to declare that a vessel is not subject to a lien claimed under subsection (b) of this section, or that the vessel is not subject to the notice of claim of lien, or both, regardless of the amount in controversy or the citizenship of the parties.[5]

## III. STATEMENT OF FACTS.

Marilyn Roden was the executive director of IMRI until January 2005. Roden Dep. at 12. IMRI is a charity that worked with women and children in Belize teaching them skills. Among other things, IMRI taught children to fix boats, sail, and use the boats to make a living fishing. *Id.* at 14. Roden kept records of boats donated to IMRI. *Id.* at 39.

Around November 2003, James Scott contacted Rumpel in connection with Scott's work for IMRI. Rumpel Aff. ¶ 2. Scott told Rumpel that the individuals who operated IMRI also operated Rachel's, which oversaw an orphanage in Belize and used boats donated to IMRI to train the orphans in the operation, maintenance, and repair of the boats. *Id.*

---

3. Many of these documents are also exhibits to the summary judgment motion and responses thereto.

4. The CIMLA replaced the Ship Mortgage Act of 1920, previously codified at 46 U.S.C. § 911, *et seq.* *See United States v. TRIDENT CRUSADER,* 366 F.3d 391, 395 (5th Cir. 2004).

5. IMRI's non-maritime claim for declaratory relief concerning the transaction involving the Vessel Victoria and the 53′ Carver motoryacht is predicated on the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.* IMRI asserts that the Court has subject matter jurisdiction over this claim pursuant to 28 U.S.C. § 1367, the supplemental jurisdiction statute.

Scott asked Rumpel to loan $300,000 to IMRI so that IMRI could purchase a 53′ Carver vessel. Rumpel looked at the vessel and agreed to make the loan. Scott advised Rumpel that the loan would be repaid in a couple of months. *Id.* ¶ 3; Rumpel Dep. at 52.

After Rumpel agreed to loan IMRI $300,000, Scott told Rumpel that the charities also needed Rumpel's 48′ Ocean vessel. Rumpel avers that Scott proposed that he (Rumpel) loan $300,000 to IMRI to acquire the 53′ Carver vessel, and that IMRI would then trade the 53′ Carver vessel to Rumpel in an even exchange for his 48′ Ocean vessel. Rumpel Aff. ¶ 4.

Thereafter, Rumpel received a document signed on behalf of Rachel's acknowledging his $300,000 loan and granting him a lien "against any and all assets charity may liquidate." *Id.* ¶ 5 & ex. A (letter from Roden to Rumpel dated December 14, 2003). IMRI concedes, for purposes of the present motion only, that IMRI, not Rachel's, received the $300,000 loan. Doc. No. 46 at 10. Rumpel also received a Bill of Sale signed on behalf of IMRI reflecting a trade of the Vessel Victoria, a 48′ Ocean Vessel, official number 955331, for the Vessel Dock–Ters Haven, a 53′ Carver S30 Voyager–Pilothouse, Official Number 1114341. Rumpel Aff. ¶ 6 & ex. B. The Bill of Sale reflects that Rumpel traded and transferred all of his rights in the Vessel Victoria to IMRI, and that IMRI traded the Vessel Dock–Ters Haven for the Vessel Victoria. The Bill of Sale provides as follows:

Owner of the vessel described below [Vessel Dock–Ters Haven], is hereby trades [*sic.*] for above vessel [Vessel Victoria] which transfers all rights, title and interest together with all gear, equipment and necessaries appertaining to said vessel as to John H. Rumpel, for no other interests, considerations, monies, or the like.

*Id.* ¶ 6, ex. B.

A Deed of Gift dated December 14, 2003, signed by Robert E. Darnaby, reflects that Darnaby transferred the Vessel Dock–Ter's Haven, Official Number 1114341 to IMRI. Doc. No. 6, ex. B. A second Deed of Gift dated December 14, 2003, purportedly signed by Rumpel,[6] reflects that Rumpel transferred the Vessel Victoria, Official Number 955331, to IMRI for "Consideration Received: None (Even Trade)." Doc. No. 6, ex. C. Both deeds of gift provide as follows:

Vessel is sold free and clear of all liens, mortgages, and other encumbrances of any kind and nature, except as stated on the reverse hereof.

Doc. No. 6, exs. B, C. None of the deeds of gift in the file contain any provisions on the reverse side of the document. On December 22, 2003, Rumpel provided IMRI with a cashier's check in the amount of $300,000. Rumpel Aff. ¶ 8 & ex. C.

In August or September 2004, IMRI sent Rumpel a Revised Invoice for dockage and insurance on the Vessel Victoria for the period January through August 2004, in the amount of $3,871.62. *Id.* ¶ 9, ex. D. Scott wrote on the bottom of the document, "if you guys wish make a dona-

---

6. Rumpel avers that he "never signed a Deed of Gift donating the [48′] Ocean [Vessel] to IMRI." Rumpel Aff. ¶ 7. He further avers that either the signature on the Deed of Gift is not his or that it may be a Deed of Gift he signed in blank that his wife incorrectly mailed to IMRI. *Id.* He attests that he noted discrepancies between his signature and the signature on the Deed of Gift. *Id.;* Rumpel Dep. at 53–54, 56. However, Roden avers that Rumpel signed the Deed of Gift in her presence. Roden Dep. at 65.

tion to Rachel's Children International, Inc. instead—for *a write off.*" Scott Dep. at 164; Rumpel Aff., ex. D.

Toward the end of 2004, Rumpel made verbal requests for repayment of the $300,000 loan, but no payment was received. In January 2005, he recorded a Notice of Claim of Lien in the amount of $300,00 with the Coast Guard to provide notice that he was granted a lien on the Vessel Victoria. Rumpel Aff. ¶ 10; *see also* Doc. No. 46, ex. A. The record also contains a Notice of Claim of Lien, signed under penalty of perjury by Rumpel, purportedly against the Vessel Victoria, but referencing Official Number 1114341, which is the Official Number of the Vessel Dock–Ter's Haven, the 53′ Carver motoryacht. Doc. No. 6, ex. D. It is unclear whether the Notice of Claim of Lien against the vessel with Official Number 1114341 was ever recorded with the Coast Guard. *See* Doc. No. 81.

In February 2005, Rumpel traded the 53′ Carver motoryacht for a new boat. Before the trade, he spent approximately $30,000 in repairs and modifications on that motoryacht. He received a trade credit of between $325,000 and $350,000 for the 53′ Carver motoryacht. Rumpel Aff. ¶ 11.

In February 2005, Rumpel recorded a second Notice of Claim of Lien with the Coast Guard indicating that he had a lien on the Vessel Victoria, Official Number 955331, in the amount of $13,397.96. In this Notice of Claim of Lien, Rumpel stated as follows:

> At the request of International Marine Research Institute, John H. Rumpel continued to pay for maintenance, repairs, dockage, advertising and other costs associated with the vessel with the understanding that these bills would be paid when the International Marine Research Institute sold the vessel Victoria. Doc. No. 46, ex. C.

On May 3, 2005, IMRI sold the Vessel Victoria to Eugene J. Vinci. Doc. No. 58–4 (Vinci Dep. at 8–11, 30–31). IMRI sold the vessel pursuant to a warranty that the vessel was free and clear of all liens, mortgages, and other encumbrances. Doc. No. 16–2 (Roden Aff. ¶ 2). Vinci, as purchaser of the Vessel Victoria, demanded that IMRI defend the notice of claim of lien filed against that vessel. *Id.* It appears that IMRI holds $27,000 in escrow from the sale of the Vessel Victoria pending the Court's decision on Rumpel Notices of Claim of Lien. Doc. No. 43–2 (IMRI's unsworn answers to interrogatories).

## IV. STANDARD OF REVIEW.

### A. Summary Judgment.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co., Inc.,* 357 F.3d 1256, 1259 (11th Cir.2004). "The party seeking summary judgment bears the initial burden of identifying for the district court those portions of the record 'which it believes demonstrate the absence of a genuine issue of material fact.'" *Cox v. Adm'r U.S. Steel & Carnegie,* 17 F.3d 1386, 1396 (11th Cir.1994) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265

(1986)). Once that showing has been made, the burden shifts to the party opposing the motion to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis omitted).

To meet this burden, the opposing party "may not rest upon the mere allegations or denials of the adverse party's pleading[.]" Fed.R.Civ.P. 56(e). In determining whether the moving party has satisfied this burden, the court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion, and resolves all reasonable doubts against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. Motion to Dismiss.

A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the Plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A trial court, in ruling on a motion to dismiss, is required to view the complaint in the light most favorable to the Plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). When considering a motion to dismiss under rule 12(b)(6), the Court should generally exclude matters outside the pleadings. However, exhibits to the complaint are a part of that pleading and are properly considered with a motion brought under rule 12(b)(6). *See* Fed.R.Civ.P. 10(c).

## V. ANALYSIS.

### A. Summary Judgment.

The motion for summary judgment is directed only to Counts One and Three of the Amended Complaint and seeks a ruling only that Defendant Rumpel does not have valid maritime liens against the Vessel Victoria based on the Notices of Claim of Lien he recorded with the Coast Guard. Doc. No. 46 at 15. Accordingly, I will not address the parts of Count Three that seek a declaration that Rumpel exchanged the Vessel Victoria, along with $300,000, to acquire the 53' Carver motoryacht as "an even trade," or that Rumpel is liable to IMRI for slandering title to the Vessel Victoria.

As to Count Two of the Amended Complaint, in response to an Order to Show Cause as to why Count Two of the Amended Complaint should not be dismissed for lack of standing (doc. no. 80) IMRI stated it did not wish to pursue the relief requested in Count Two. Doc. No. 81 at 2. Accordingly, I also will not address the merits of Count Two of the Amended Complaint.

### 1. Maritime Lien Arising From the Loan.

▋ IMRI first argues that the December 14, 2003, letter from Marilyn Roden acknowledging the $300,000 loan Rumpel made to IMRI and granting Rumpel a lien "against any an all assets charity may liquidate," doc. no. 46, ex. D, could not have created a maritime lien as a matter of law.[7] Rumpel does not directly contest IMRI's arguments that he does not have a maritime lien on the Vessel Victoria as a result of the loan made to IMRI. He ar-

---

7. The letter of acknowledgment provided that Rumpel would have a lien against the assets

liquidated by Rachel's, rather than IMRI. I assume for purposes of this report that the

gues, instead, that he has a valid non-maritime lien, which was properly recorded pursuant to 46 U.S.C. § 31321 and 46 C.F.R. § 67.200.

The issue of whether a valid maritime lien exists as to a particular vessel presents a question peculiar to maritime law. In general, a maritime lien is defined as "a special property right in a vessel given to a creditor by law as security for a debt or claim arising from some service rendered to the ship to facilitate her use in navigation or from an injury caused by the vessel in navigable waters." ROBERT FORCE, ADMIRALTY AND MARITIME LAW 163 (2004) (internal quotation marks and citation omitted); *see also In re Container Applications Int'l, Inc.*, 233 F.3d 1361, 1362 n. 1 (11th Cir.2000) ("A maritime lien is [a] special property right in a ship given to a creditor by law as security for a debt or claim subsisting from the moment the debt arises[.]") (internal quotation marks and citation omitted; alterations in original).

■ A loan of monies to purchase a vessel ordinarily does not give rise to a maritime lien. *Cf. Wilkins v. Comm. Inv. Trust Corp.*, 153 F.3d 1273, 1277 (11th Cir.1998) (no maritime lien arose when individual loaned money to vessel's prospective purchaser). In this case, however, Rumpel asserts that the letter acknowledging the loan and providing for a lien on the assets liquidated by the charity is, effectively, a mortgage from which a lien against the Vessel Victoria arises.

Prior to the enactment of the Ship Mortgage Act of 1920(SMA), a ship mortgage was not considered a maritime contract and, therefore, did not fall within the purview of a federal court's admiralty jurisdiction. *See Detroit Trust Co. v. The Thomas Barlum*, 293 U.S. 21, 55 S.Ct. 31, 79 L.Ed. 176 (1934). As such, "mortgage security on ships was practically worthless." *Id.* at 39 (internal quotation marks and citations omitted). "The Ship Mortgage Act was intended to remedy this problem." *Governor and Co. of Bank of Scotland v. Sabay*, 211 F.3d 261, 270 (5th Cir.2000). "The Ship Mortgage Act provided a means through which vessel mortgages could be given a preferred status and could be enforced in admiralty." *Dietrich v. Key Bank, N.A.*, 72 F.3d 1509, 1513 (11th Cir. 1996).

In sum, the SMA expanded the admiralty jurisdiction of the federal courts, but only with respect to "preferred mortgages." *See The Thomas Barlum*, 293 U.S. at 33, 55 S.Ct. 31 ("The grant is thus one of exclusive jurisdiction to enforce the lien of a 'preferred mortgage.' If the mortgage is a preferred mortgage within the definition of the [SMA], jurisdiction is granted; otherwise not."); *McCorkle v. First Pennsylvania Banking & Trust Co.*, 459 F.2d 243, 248 (4th Cir.1972) ("Thus, notwithstanding the 1920 extension of admiralty jurisdiction to *preferred* maritime mortgages, courts continue to recognize the vitality of the pre–1920 rule with respect to *non-preferred* ship mortgages.") (emphases original); *R.C. Craig Ltd. v. Ships of the Sea Inc.*, 401 F.Supp. 1051, 1056 (S.D.Ga. 1975) ("A common-law mortgage on a vessel confers no right of cases to the admiralty courts of the United States. Such an instrument does not constitute a maritime contract.... The only mortgage on a ship which may invoke the admiralty jurisdic-

letter of acknowledgment should have referenced IMRI, rather than Rachel's, based upon IMRI's concession, for purposes of the present motion, that IMRI received the $300,000 loan.

tion ... is one executed in accordance with the [SMA].") (internal citations omitted).

In order for a mortgage on a ship to qualify as a "preferred mortgage" under the CIMLA, it must meet several statutory requirements. *See* 46 U.S.C. §§ 31301, 31322. Specifically, the mortgage must, among other things, be filed in substantial compliance with 46 U.S.C. § 31321, which provides, in relevant part as follows:

> (a)(1) A bill of sale, conveyance, mortgage, assignment, or related instrument, whenever made, that includes any part of a documented vessel or a vessel for which an application for documentation is filed, must be filed with the Secretary of Transportation to be valid.... [8]

Rumpel presented no evidence that the letter from Roden acknowledging the loan or the Bill of Sale for the Vessel Victoria were filed with the Secretary of Transportation. Thus, even assuming that the letter acknowledging the $300,000 loan Rumpel made to IMRI constitutes a mortgage, this instrument does not meet the requirements for a "preferred mortgage" under the CIMLA and, therefore, cannot create a maritime lien.[9]

In the motion for summary judgment and responses thereto, the parties digress into argument regarding whether Rumpel has a non-maritime lien against the Vessel Victoria arising from the loan and the letter acknowledging the loan, and whether a non-maritime lien may be properly noticed by filing a Notice of Claim of Lien with the Coast Guard. In its Amended Complaint, IMRI did not seek a declaration that Rumpel had no liens against the Vessel Victoria; rather, it sought only a declaratory judgment that Rumpel had no maritime liens against the Vessel Victoria. Therefore, the issue of whether the Notices of Claim of Lien are proper with respect to non-maritime liens is not before the Court.[10]

Accordingly, summary judgment in favor of IMRI is appropriate with respect to Count One of the Amended Complaint as it pertains to the Notice of Claim of Lien in the amount of $300,000 against the Vessel Victoria.

### 2. *Maritime Lien for Necessaries.*

■ IMRI next argues that Rumpel cannot assert a maritime lien for "maintenance, repairs, dockage, advertising and other costs associated with the vessel[,]" *see* doc. no. 6, ex. F., because "the alleged

---

**8.** The statute further provides that:
> (b) To be filed, a bill of sale, conveyance, mortgage, assignment, or related instrument *must*—
> (1) identify the vessel;
> (2) state the name and address of each party to the instrument;
> (3) state, if a mortgage, the amount of the direct or contingent obligations (in one or more units of *account as agreed to* by the parties) that is or may become secured by the mortgage, excluding interest, expenses, and fees;
> (4) state the interest of the grantor, mortgagor, or assignor in the vessel;
> (5) state the interest sold, conveyed, mortgaged, or assigned; and
> (6) be signed and acknowledged.

46 U.S.C. § 31321(b).

**9.** I assume, for purposes of this analysis, that a preferred mortgage is properly classified as a maritime lien, even though it may not be strictly correct to call a preferred mortgage a maritime lien. *See TRIDENT CRUSADER,* 366 F.3d at 394 n. 13 ("The statutory scheme deems the preferred mortgage a 'lien' on the 'vessel,' but does not call it a 'maritime lien.' The statute distinctively denominates maritime liens and preferred mortgage liens where both are intended.") (citing 46 U.S.C. §§ 31325(a), 31326(a)).

**10.** *But see* 46 C.F.R. § 67.255.

necessaries lien is stated to have arisen on December 14, 2003, ... the same day Rumpel stated under oath that there were no liens against the vessel," doc. no. 46 at 12. More specifically, IMRI argues that Rumpel stated in the Deed of Gift dated December 14, 2003, that he transferred the Vessel Victoria without any liens or encumbrances. *See* Doc. No. 6, ex. C.

The CIMLA provides a maritime lien to any person who furnishes "necessaries" to any foreign or domestic vessel. 46 U.S.C. § 31342(a); *see also Galehead, Inc. v. M/V Anglia,* 183 F.3d 1242, 1244 (11th Cir.1999) ("[T]o obtain a maritime lien [pursuant to 46 U.S.C. § 31342(a)], a person must: (1) provide necessaries; (2) to a vessel; (3) on the order of the owner or agent."). The term "necessaries" is defined to include "repairs, supplies, towage, and the use of a dry dock or maritime railway." 46 U.S.C. § 31301(4). The term has also been construed to include any "goods or services that are useful to the vessel, keep her out of danger, and enable her to perform her particular function." *Bradford Marine, Inc. v. M/V Sea Falcon,* 64 F.3d 585, 589 (11th Cir.1995) (internal quotation marks and citation omitted); *see also Equilease Corp. v. M/V Sampson,* 793 F.2d 598, 603 (5th Cir.1986) ("It is the present, apparent want of the vessel, not the character of the thing supplied, which makes it a necessary.") (internal quotation marks and citation omitted).

■ Genuine issues of material fact exist as to whether Rumpel has a maritime lien for necessaries he furnished to the Vessel Victoria. In the Notice of Claim of Lien Rumpel signed on February 25, 2005, Rumpel avers that "[a]t the request of [IMRI], [he] continued to pay for maintenance, repairs, dockage, advertising and other costs associated with the vessel with the understanding that these bills would be paid when [IMRI] sold the vessel Victoria." Doc. No. 46, ex. C. Expenses incurred for maintenance, repairs, and dockage fall within the statutory definition of necessaries. Because a maritime lien arises at the moment the goods or services are supplied or performed, *see, e.g., M/V Anglia,* 183 F.3d at 1247; *Sabay,* 211 F.3d at 268, the Deed of Gift indicating that there were no liens as of the time it was signed does not preclude a showing that a maritime lien arose for necessaries furnished by Rumpel to the Vessel Victoria after the Deed of Gift was signed.

The record before the Court is silent as to the physical location of the Vessel Victoria at the time of its transfer to IMRI and thereafter. The evidence is also unclear as to who furnished necessaries to the Vessel Victoria and when these necessaries were furnished. *Compare* Rumpel Aff., ex. D. & Scott Dep. at 163–64 *with* Notice of Claim of Lien, Doc. No. 46, ex. C.

Accordingly, the existence of disputed questions of material fact precludes entry of summary judgment in favor of IMRI with respect to Count Three of the Amended Complaint.

### B. Motion to Dismiss.

The basis for IMRI's motion to dismiss Rumpel's counterclaims for failure to state a cause of action is not self-evident. IMRI does not present any argument or citation of authorities with respect to this issue. Therefore, the motion to dismiss Rumpel's counterclaims should be denied.

## VI. RECOMMENDATION.

Based on the foregoing report, I respectfully recommend that Plaintiff International Marine Research Institute Inc.'s

Dispositive Motion for Summary Judgment Pursuant to Fed.R.Civ.P. 56 or, in the Alternative, Motion to Dismiss for Failure to State a Cause of Action upon Which Relief May Be Granted, doc. no. 46, be **GRANTED** as to the claim in Count One that Rumpel does not have a maritime lien against the Vessel Victoria, Official Number 955331, in the amount of $300,000, and **DENIED** in all other respects. I further recommend that the Court dismiss without prejudice the claim in Count Two of the Amended Complaint.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on May 19, 2006.